IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW WYSOTSKI and LORI LEARMONT, | No. C 02-04952 CRB |
| Plaintiffs, | **ORDER OF DISMISSAL** |
| v. | |
| AIR CANADA, et al., | |
| Defendants. | |

Plaintiffs filed this lawsuit approximately four years ago seeking to recover damages for the loss of FU, their pet cat, in transport by air from Toronto to San Francisco. Now before the Court is defendant Air Canada's motion to dismiss for lack of jurisdiction. After carefully considering the parties' briefing papers, as well as the record in this case, and with the benefit of oral argument, this action on behalf of FU appears to have reached its ninth life. For the following reasons, defendant's motion is hereby GRANTED.

**BACKGROUND**

I.  **Case History**

On August 23, 2001, plaintiffs flew on Air Canada from Toronto to San Francisco with their five pet cats. Three of the cats, including 14-year-old FU (apparently pronounced "EFF-YOU"), were housed in individual, airline-approved cat crates; the remaining two cats shared a fourth crate. According to plaintiffs' amended complaint, defendant Air Canada

assured plaintiffs that their cats would be handled with care, and that the crates would be hand-carried on and off the airplane. Am. Compl. ¶ 12.

When the plane landed at San Francisco International Airport, ramp personnel from defendant Continental Airlines were allegedly responsible for unloading baggage, including plaintiffs' cats. Plaintiffs claim that when they went to baggage claim to retrieve the cats, they discovered that the crate that had contained FU was damaged and that FU was missing. On information and belief, plaintiffs allege that the damage resulted because "[t]he crates were placed on a steep ramp that led down from the airplane and the crates accelerated down the ramp, smashing into the ground." Am. Compl. ¶ 17. Although Air Canada permitted plaintiffs to search for FU in the area around the airplane for twenty minutes, FU was never located.

Plaintiffs filed suit against Air Canada and Continental Airlines, asserting a claim under the Warsaw Convention as well as state law claims for negligence, negligent infliction of emotional distress, fraud, false advertising, and violation of California Civil Code section 3340. The action against Air Canada was stayed pending the company's bankruptcy reorganization. During that time, Court issued orders denying Continental Airlines' motions to dismiss and partial summary judgment before Continental was dismissed from the case after it reached a settlement with plaintiffs.

## II. Current Motion

Plaintiffs have sought to lift the stay now that Air Canada's reorganization is complete and pursue their claims in this Court against "insurance proceeds only." Defendants contend that, as a result of the discharge of all claims against Air Canada and the satisfaction of plaintiffs' claim during the bankruptcy proceeding, plaintiffs have no valid claims remaining for the Court to adjudicate.

The bankruptcy proceeding took place in Canada with an ancillary proceeding in the Southern District of New York. As part of that proceeding, plaintiffs submitted an unsecured

claim. See Declaration of Jeri Rouse Looney, Ex. 1.[1] The proof of claim form included an explanation for "Excluded Claims," which noted that "that portion of a claim arising from a cause of action for which the Applicants [Air Canada] are fully insured." Id. at 5.

The Monitor appointed by the Ontario Superior Court awarded plaintiffs CAD$333.91 (US$226.75) for a violation of the Warsaw Convention. See Looney Decl., Ex. 2. The Monitor limited the award to the damage calculation called for under Article 22(2) of the Warsaw Convention, which assigns an award of US$9.07 per pound. Id. The Monitor estimated that FU and its crate weighed 25 pounds and calculated the award accordingly. Id. The Monitor noted that the Warsaw Convention exclude punitive and emotional damages, and noted that Air Canada would only be liable for up to CAD$1,500, which corresponded to the deductible payable by Air Canada under its insurance policy covering the claim. In addition, the Notice of Revision (Monitor's decision) included the following caveat:

> If you intend to dispute a Notice of Revision or Disallowance, you must, within 10 calendar days of the date of this Notice of Revision or Disallowance, deliver a Dispute Notice.... If you do not deliver a Dispute Notice, the value of your Claim shall be deemed to be as set out in this Notice of Revision or Disallowance.

Id. Plaintiffs did not dispute the award and accepted two shares of stock as satisfaction.

On September 28, 2004, the Bankruptcy Court gave full force and effect in the United States to the Canadian Court order sanctioning and approving of the Plan of Arrangement. In its order pursuant to section 304, the Bankruptcy Court entered a permanent injunction that ordered:

> each Affected Unsecured Claim shall be settled, compromised and released in accordance with the Plan of Arrangement, and the ability of an Affected Unsecured Creditor to proceed against the Foreign Debtors in respect of an Affected Unsecured Claim *shall be forever discharged and restrained*, and all proceedings with respect to, in connection with or relating to such Affected Unsecured Claims are hereby permanently stayed...

See Bankruptcy Order, Looney Decl., Ex. 3 (emphasis added).

Defendant contends that the resolution of plaintiffs claim under the Plan of Arrangement and the subsequent permanent injunction by the bankruptcy court have resolved

---

[1] Defendant has requested, and plaintiffs have not opposed, that the Court take judicial notice of the relevant documents pertaining to the bankruptcy proceedings in Canada and the United States. Pursuant to Federal Rule of Evidence 201(d), the Court grants the request.

3

plaintiffs' claims. Plaintiffs contend that (1) its claims were not fully satisfied by the bankruptcy proceeding; (2) defendant has not proven that its insurance deductible is $1,500; and (3) regardless, FU's value exceeds CAD$1,500 so they may still pursue an "Excluded Claim" against defendant. The Court heard oral argument on March 3, 2006, and resolves these issues as follows.

## DISCUSSION

### I.   Application of the Warsaw Convention

Despite the fact that the Amended Complaint includes a claim against both defendants under the Warsaw Convention, plaintiffs' counsel represented to the Court that it is not clear whether the Warsaw Convention applies in this instance. Moreover, in previous motions, plaintiffs have acknowledged that the Warsaw Convention applies to this case and the Court has held that it does, as well. See generally Order Denying Defendant Continental Airlines' Motion to Dismiss (Docket #47). In addition, the bankruptcy proceeding also involved the application of the Warsaw Convention.

### II.   State Law Claims

The Warsaw Convention preempts all state-law claims relating to "international transportation of persons, baggage, or goods performed by aircraft for hire." Convention art. 1(1). An air carrier is liable for damage to checked baggage or goods provided that the "occurrence which caused the damage so sustained took place during the transportation by air." Id. art. 18(1). The term "air transportation" includes not only the flight itself, but rather every component of "the period during which the baggage or goods are in charge of the carrier, whether in an airport or on board an aircraft." Id. art. 18(2).

As interpreted by the courts, the Warsaw Convention preempts not only state-law claims that could be asserted under the Convention, but *all* causes of action for damage to persons or cargo suffered during international air transportation. See El Al Israel Airlines, Ltd. v. Tseng, 525 U.S. 155, 174-76 (1999). In other words, the Convention is the exclusive source of any remedy that can be obtained in connection with an injury arising out of international air transport; if a claim cannot be asserted under the Convention, it cannot be

asserted at all.  See King v. American Airlines, Inc., 284 F.3d 352, 356-59 (2d Cir. 2002) (discrimination claims preempted); Carey v. United Airlines, 255 F.3d 1044, 1048-51 (9th Cir. 2001) (claim for intentional infliction of emotional distress preempted by Warsaw Convention); Brandt v. American Airlines, 2000 WL 288393, at *4 (N.D. Cal. 2000) (Illston, J.) (all state-law claims preempted); Peralta v. Continental Airlines, Inc., 1999 WL 193393, at *2 (N.D. Cal. 1999) (Jenkins, J.) (all state-law claims preempted).

When a plaintiff whose injuries flow from international air transportation asserts state-law claims that are "so closely related to the loss of the luggage itself as to be, in a sense, indistinguishable from it," those claims are preempted even though they may be ancillary to the event that proximately caused the damage.  See Cruz v. American Airlines, 193 F.3d 526 (D.C. Cir. 1999).  In Cruz, plaintiffs who alleged that an airline lost their luggage were not permitted to plead a separate claim alleging that the airline wrongfully denied their lost-luggage claim.  See id. at 531.  Similarly, in Fishman v. Delta Air Lines, Inc., 132 F.3d 138 (2d Cir. 1998), the Second Circuit rejected a plaintiff's attempt to plead around the Warsaw Convention by asserting a claim for tortious denial of medical care in connection with a scalding that occurred in-flight.  See id. at 141-42.  In both cases, the courts' primary concern was to avoid "tear[ing] an obvious hole in the Convention's exclusivity" as the font of all claims arising out of international air transport.  Cruz, 193 F.3d at 531-32.

Here, there is no dispute that FU's disappearance occurred during "international air transportation" as that term is defined by the Convention.  Plaintiffs argue, however, that Air Canada's misrepresentations concerning the care that would be taken with their cats occurred prior to the air transportation and hence is not preempted by the Convention.  Similarly, plaintiffs contend that the airline's refusal to permit adequate searching for FU after his crate was discovered empty occurred subsequent to air transportation and hence is actionable under state law.

The Warsaw Convention, however, would cease to be an exclusive remedy–and the Supreme Court's opinion in El Al would be gutted–if plaintiffs who could not assert state-law claims for the act itself were nonetheless permitted to sue under state law for ex ante

5

representations that the act would not occur or ex post failure to redress the harm. That is the thrust of Cruz and Fishman, and the Court finds this logic persuasive. If plaintiff's argument is valid, airlines could still be liable for every representation they make regardless of the protections of the Warsaw Convention. That was not the intention of the Convention. Accordingly, all of plaintiff's causes of action collapse into its claim for breach of the Warsaw Convention.

**III.   Bankruptcy Court Order**

Plaintiffs contend that they have returned to this Court following the bankruptcy proceeding to pursue an "Excluded Claim" against Air Canada's insurer. Yet the only claim before the Court is the same claim under the Warsaw Convention against Air Canada that was adjudicated during the bankruptcy reorganization proceeding and adopted by the bankruptcy court in the Southern District of New York. Plaintiffs vehemently assert that the true, or peculiar, value of FU exceeded the deductible for which Air Canada would have been liable, thereby giving rise to a claim against Air Canada's insurer for the value of FU that exceeds CAD$1,500. In effect, however, plaintiffs argument amounts to a challenge to the damages calculation of the Monitor.

Plaintiffs submitted a claim to the Monitor as part of Air Canada's bankruptcy reorganization proceeding, received an award, were offered an opportunity to challenge the award, and declined to do so. That award was then incorporated into the Plan of Arrangement in Canada and sanctioned and confirmed by bankruptcy courts in both Canada and the United States. "A confirmed reorganization plan operates as a final judgment with res judicata effect." See In re Robert L. Helms Construction and Development Co., Inc., 139 F.3d 702, 704 (9th Cir. 1998). Plaintiffs do not present a different *claim* here against an insurer; rather, they argue that the same claim adjudicated by the bankruptcy court should have received a different *damages* determination. That argument, however, is more appropriately filed in a bankruptcy court that sanctioned the damages determination. It is not within this Court's jurisdiction or authority to second guess another court's valuation of FU the Flying Feline; in fact, the principles and purpose of res judicata preclude the Court from

6

doing so. If plaintiffs want to proceed with their arguments concerning FU's damages calculation, they must do so in the bankruptcy court that originally adjudicated the claim, to the extent they still can.

## CONCLUSION

For the foregoing reasons, the Court hereby DISMISSES with prejudice the state law claims as preempted by the Warsaw Convention. In addition, the Court hereby DISMISSES plaintiffs' only remaining claim under the Warsaw Convention without prejudice to pursuing this action in the appropriate bankruptcy court.

**IT IS SO ORDERED.**

Dated: March 6, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE